UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO: 1:07-CV-0012-R

FREDIA KAY MELTON                                                              PLAINTIFF

v.

FEDERAL-MOGUL CORPORATION
and FEDERAL-MOGUL PRODUCTS, INC.                               DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon the Defendants' (together, "Federal-Mogul") Motion
for Summary Judgment (Docket #14).  The Plaintiff responded (Docket #19) and the Defendant
replied (Docket #21).  This matter is ripe for adjudication.  For the following reasons, the
Defendants' Motion is **GRANTED.**

## BACKGROUND

The Plaintiff, Fredia Kay Melton, began her employment as an hourly production
employee for Federal-Mogul at its automotive brake linings manufacturing plant located in
Glasgow, Kentucky, in April 2001.  In July 2005, the Plaintiff was diagnosed with breast cancer.
On August 22, 2005, the Plaintiff requested and was granted medical leave in order to undergo
treatment.  In support of her request, Dr. Korba, who performed the biopsy of the Plaintiff's left
breast, completed a Certification of Health Care Provider that stated Melton was unable to work.
On August 23, 2005, the Plaintiff submitted an application for short-term disability benefits
(STD benefits), and began receiving those benefits from her STD insurer MetLife.

On September 12, 2005, the Plaintiff's plastic surgeon, Dr. Atalla, issued a written
statement extending the Plaintiff's leave for an additional four weeks.  On September 13, 2005,
the Plaintiff underwent a left breast mastectomy followed by reconstructive surgery.  Following

the mastectomy, the Plaintiff underwent radiation therapy between November 2, 2005, and

December 14, 2005.  During this time, she was under the care of Dr. Tyree, who issued off work

statements for the Plaintiff from November 15, 2005, until January 16, 2006.

On January 16, 2006, Dr. Tyree issued a work restriction to Plaintiff stating:

Restrictions for return to work: L arm-no lifting > 10#s & no repetitive movements.  Will recheck 4/17/06.

At the time she was granted leave, the Plaintiff worked as a bagger operator.  Her job

entailed filling molds with brake compound.  After the molds were filled they weighed between

eighteen and twenty-three pounds each, and the Plaintiff then lifted the molds onto a rack

between 600 and 650 times per shift.

Federal-Mogul's policy concerning leaves of absence, set forth in the Federal Mogul

Team Member Handbook, provides that the maximum time allowed is six months of continuous

absence.  If employees are unable to return to work at the end of this leave, they are discharged.

(Affidavit of Becky Pendley).  This policy applies to all leaves of absence, regardless of the

underlying need for the leave.  (Affidavit of Stuart McRobbie).

Further, during the time that Stuart McRobbie was the Glasgow plant manager, it was

Federal-Mogul's policy not to accommodate temporary work restrictions except in cases of

pregnancy or work-related injury.  (Affidavit of Stuart McRobbie).  As the Plaintiff's work

restrictions did not stem from one of the two exceptions, Federal-Mogul did not provide

temporary light duty to the Plaintiff.  This policy is not listed in the Federal Mogul Team

Member Handbook.

Federal-Mogul posts all job openings on the bulletin board in the cafeteria, where they

remain for forty-eight hours.  Team members interested in the job are required to sign the

posting.  Employees must be actively at work in order to bid on a posted position, and employees on leaves of absence are not eligible for consideration for job postings during their absence. (Affidavit of Becky Pendley; Affidavit of Stuart McRobbie).

On January 18, 2006, Dr. Tyree issued another statement, with the effect of taking the Plaintiff off work until her next appointment on April 17, 2006:

> If no light duty is available with the work restrictions previously listed Ms. Melton is off work until seen on 4/17/2006.

Before her leave was set to expire in February 2006, the Plaintiff met with Stuart McRobbie, the plant manager, and Becky Pendley, a Human Resources Assistant for Federal-Mogul, to review her employment situation.  At the meeting, the Plaintiff inquired about a job opening in the tool crib, but was told by Mr. McRobbie that she could not apply for the job because she was on leave and could not return to work until she was completely free of work restrictions.  It is not clear whether there was an open job in the tool crib at the time.

The Plaintiff did not request that her leave be extended beyond six months.  The Team Member Handbook states that extensions may be available if approved by the plant manager and human resources manager.

MetLife continued to pay the Plaintiff's STD benefits until February 27, 2006.  By a letter dated February 21, 2006, Federal-Mogul advised the Plaintiff that her employment was terminated because she was unable to return to work after exhausting all available sick leave.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that

the moving party is entitled to judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

The Plaintiff brought this action pursuant to the Kentucky Civil Rights Act (KCRA), KRS 344.010 *et seq*.  She alleges (1) Federal-Mogul discriminated against her in violation of KRS Chapter 344 when she was discharged from her employment because Federal-Mogul regarded her as having a disability as defined by KRS 344.010(4); and (2) Federal-Mogul discriminated and retaliated against her in violation of KRS Chapter 344 by subjecting her to an unjust termination solely because it regarded Plaintiff as having a disability.

4

The language of the KCRA mirrors the language of the Americans with Disabilities Act (ADA). *Brohm v. Jh Props*., 149 F.3d 517, 520 (6th Cir. 1998). Therefore, the Court may look to federal case law in interpreting the KCRA with respect to the Plaintiff's clam of disability discrimination under KRS 344.010. *Hallahan v. Courier-Journal*, 138 S.W.3d 699, 706 (Ky. Ct. App. 2004).

Federal-Mogul asserts that summary judgment is proper because the Plaintiff has failed to establish either a prima face case of disability discrimination or of retaliation under the KCRA.

**1. Disability Discrimination under the Kentucky Civil Rights Act**

Under KRS §344.040(1), it is unlawful for an employer to discharge or otherwise discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because the person is a "qualified individual with a disability." KRS §344.040(2008). The plaintiff bears the initial burden of providing a prima facie case of disability discrimination, which requires a plaintiff to prove: (1) she is an individual with a disability; (2) she is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodations; and (3) she was discharged solely by reason of her handicap. *Williams v. London Utility Comm'n*, 375 F.3d 424, 428 (6th Cir. 2004) (citing *Cotter v. Ajilon Servs*., 287 F.3d 593, 598 (6th Cir.2002)); *Hallahan*, 138 S.W.3d.at 706-07. "If the plaintiff proves a prima facie case, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. Then, the burden shifts back to the plaintiff to prove that the stated reasons are pretext." *Id.*

Both the ADA, at 42 U.S.C. §12102(2), and KRS 344.010(4), define a "disability" as :

(a) A physical or mental impairment that substantially limits one or more of the major life activities of the individual;

(b) A record of such an impairment; or

(c) Being regarded as having such an impairment.

In her complaint, the Plaintiff alleges that the Defendants "regarded her as having a disability."  However, the Plaintiff also asserts that she has established a prima facie showing of "disability" under both (a) and (b), above, as well.  While the complaint quite clearly states only a regarded-as-disabled claim (¶13) and sets forth the elements of such a claim (¶14), for the sake of thoroughness, the Court will examine whether the Plaintiff has made a prima facie showing that she is an "individual with a disability" under each of the three prongs listed above. *Williams*, 375 F.3d at 428.

## A.  A physical or mental impairment that substantially limits one or more major life activities

The first possible way of establishing "disability" is to prove an impairment that substantially limits one or more major life activities.  42 U.S.C. §12102(2); KRS 344.010(4).  Thus, to meet the definition of "disability" under prong, the Plaintiff must prove (1) that she has an impairment, (2) affecting a major life activity, (3) resulting in a substantial limitation of that major life activity.  *Bragdon v. Abbott*, 524 U.S. 624, 630 (1998).  Federal-Mogul does not dispute that the Plaintiff's breast cancer constituted a physical impairment.  Federal-Mogul does contend, however, that the Plaintiff has not proved that this impairment affected a major life activity or substantially limited that major life activity.

The United States Supreme Court has held that the term 'major life activities' "refers to those activities that are of central importance to daily life."  *Toyota Motor Mfg., Kentucky, Inc. v.*

*Williams*, 534 U.S. 184, 197 (2002).  "Merely having an impairment does not make one disabled for purposes of the ADA."  *Id*. at 195.   Further, the Court said, such "terms need to be interpreted strictly to create a demanding standard for qualifying as disabled."  *Id*. at 197. Individuals attempting to prove disability status cannot "merely submit evidence of a medical diagnosis of an impairment.  Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" *Id.* at 198 (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)).

        The Plaintiff claims that as a result of her breast cancer, she was not able to work the job she previously performed, but that she could work with certain restrictions.  After the Plaintiff's mastectomy and reconstructive surgery, she experienced pain in her left arm and her doctors restricted her from repetitive movements or lifting over ten pounds with that arm.  She now has a permanent work restriction imposed by her physician and must avoid lifting in excess of fifteen pounds with her left arm, and must minimize overuse of the left upper extremity.  In her deposition, the Plaintiff stated that her arm hurts, but that it does not interfere with her daily activities.

        By all accounts, the Plaintiff is able to perform the variety of tasks central to most people's daily lives, and she was able to perform such tasks at the time of her termination in February 2006.  At the time the Plaintiff went in to meet with McRobbie and Pendley in February 2006, her doctor had cleared her for a return to work as long as it was on light duty, indicating that her major life activities were unaffected.

        The Plaintiff is currently a full-time employee in the Adair County Clerk's Office, having

moved from a part-time position there.  There is no evidence that she is not able to perform the major life activities of walking, seeing, hearing, speaking, sleeping, interacting with others, feeding herself, and executing the manual tasks of every day life.  *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) ("Major life activities include, among other things, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working.").  While the Plaintiff may not be able to perform her specific former assembly job at Federal-Mogul, there is no evidence in the record that she cannot perform the variety of tasks central to most people's daily lives or that she could not perform those tasks at the time her employment was terminated in February 2006.  42 U.S.C. § 12102(2)(a); KRS 344.010(4); *Toyota Motor*, 534 U.S. at 197.  Therefore, the Plaintiff has not proved that her impairment substantially affected a major life activity, and she has not established that she is an individual with a disability under this prong.

### B.  A record of an impairment that substantially limits one or more major life activities

The second possible way of establishing "disability" is to prove a record of impairment that substantially limits one or more major life activities.  42 U.S.C. §12102(2); KRS 344.010(4). In order to establish the existence of a disability under this prong, it is not enough for the Plaintiff to simply show that she has a record of a cancer diagnosis; instead, she must prove a record of an impairment that substantially limits one or more of her major life activities.  *EEOC v. R.J. Gallaher Co.*, 181 F.3d 645, 655 (5th Cir. 1999).  While not particularly illuminating, the Equal Employment Opportunity Commission (EEOC) regulations define "record of impairment" as meaning "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."  29 CFR 1630.2(k).

The Plaintiff has not pointed to specific evidence showing a record of impairment that meets this test.  She states that she has established a prima facie showing of discrimination under this prong, but does not explain how she has made such a showing, and the Court can find no such evidence.  The only "records" of Plaintiff's impairment (which is not disputed) are the medical records associated with her breast cancer diagnosis and subsequent treatment.  In reviewing the record, the Court finds that it has the Plaintiff's mammography report, various operative reports and letters from her doctors, a calendar containing the Plaintiff's medical appointments, her STD benefits request form and other various MetLife correspondence.  However, all of this documentation is associated with an impairment that the Court has already determined does not substantially limit one of the Plaintiff's major life activities.  Therefore, the Plaintiff has not established that she is an individual with a disability under this prong.

### C.  Regarded as having an impairment that substantially limits one or more major life activities

The third possible way of establishing "disability" is to prove that the Plaintiff was regarded as having an impairment that substantially limited one or more major life activities.  42 U.S.C. §12102(2); KRS 344.010(4).  The Supreme Court of the United States has identified two ways in which individuals may fall within the regarded-as-disabled category:

> (1) [an employer] mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or
>
> (2) [an employer] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

*Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999).

The regarded-as-disabled definition "protects employees who are 'perfectly able' to perform a job, *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001), but are 'rejected

9

because of the 'myths, fears and stereotypes' associated with disabilities.'" *Gruener v. Ohio Cas. Ins. Co.*, 2008 U.S. App. LEXIS 30, at \*5-6 (6th Cir. Jan 3., 2008) (quoting *Sutton*, 527 U.S. at 489-90 (quoting 29 CFR 1630.2(l))).  Either of the two applications, above, requires that the employer "'entertain misperceptions about the [employee].'" *Id.* at \*6 (quoting *Sutton*, 527 U.S. at 489).

As previously stated, Federal-Mogul does not dispute that the Plaintiff's breast cancer constituted a physical impairment, but it does argue that it never regarded the Plaintiff's impairment as substantially limiting her ability to perform any major life activity.

To establish that she had a protected "disability" under this prong, the Plaintiff must prove that Federal-Mogul mistakenly viewed her breast cancer as "substantially limiting" her ability to perform a major life activity.  *Toyota Motor*, 534 U.S. at 196.  The *Toyota Motor* Court said that substantially limited means "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity."  *Id.* (quoting 29 CFR 1630.2(j)).

To succeed upon the regarded as disabled claim, the Plaintiff must demonstrate that Federal-Mogul thought both that she was disabled and that she was significantly limited in her ability to work in a broad class of jobs, not simply her job at Federal-Mogul.  *Howard Baer*, 127 S.W.3d at 594 (citing *Ross v. Campbell's Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001)).

The evidence shows that Federal-Mogul was aware that the Plaintiff was undergoing treatment for breast cancer and was drawing STD benefits.  The evidence also shows that the restriction issue by Dr. Tyree on January 16, 2006, limiting the Plaintiff to lifting no greater than

10

ten pounds with her left arm and not using the arm for any repetitive movements, was provided to the STD insurer MetLife, and MetLife in turn asked Federal-Mogul if it could accommodate the Plaintiff's work restrictions.  However, both Stuart McRobbie, the plant manager, and Becky Pendley, the Human Resources Assistant, claim that the Plaintiff never presented them with any doctor's statement imposing restrictions on her work activities, and the Plaintiff does not assert otherwise.

The Plaintiff also claims that on or about December 12, 2005, she called the plant manager and asked about a job opening in quality control.  However, the Plaintiff claims she was told that she could not bid on this job because she was on leave and that she would not be considered for the position unless she was back at work with no restrictions.  The Plaintiff also testified that as she was undergoing radiation therapy in December 2005, she would not have been able to work at that time.

When the Plaintiff met with Stuart McRobbie and Becky Pendley in February 2006, she claims that she inquired about a job opening in the tool crib.  She testified that she was not sure if the job was open or if she was qualified to perform the work.  Either way, the Plaintiff claims she was again told that she could not bid on this job because she was on leave and that she would not be considered for the position unless she was back at work with no restrictions.  The evidence shows that a job in the tool crib requires lifting in excess of ten pounds with both arms and involves multiple repetitive movements.

Federal-Mogul's policy restricts bidding on open jobs to employees who are actively at work.  In a factory setting, where assembly lines run in production all day long, the need for the continuous and immediate presence of employees trained to perform the jobs required each step

11

of the way along the line makes such a policy of filling vacancies in a prompt fashion reasonable.  If the Plaintiff could not have performed the two jobs about which she inquired, it is not evidence that Federal-Mogul regarded her as having an impairment that substantially limited one of her major life activities when it did not immediately give the Plaintiff either of those two positions.

The Plaintiff asserts that Federal-Mogul's policy of only providing temporary work restrictions to employees restricted by work-related injury or pregnancy is discriminatory, and Federal-Mogul cannot rely on this policy to support its termination decision.  However, it is not for the Court to decide in this action whether this policy is discriminatory.  The Plaintiff has asserted a claim for disability discrimination under the KCRA.  Under KRS §344.040(1), it is unlawful for an employer to discharge or otherwise discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because the person is a "qualified individual with a disability."  As previously discussed, a person may only assert such a claim if they have a "disability" as defined by the KCRA.  The Plaintiff must fall under one of three specific categories to be regarded as an "individual with a disability" who may assert a claim under the KCRA, and the requirements of those categories are unaffected by an allegedly discriminatory work restrictions policy.

Thus, the Plaintiff has not proved  that Federal-Mogul entertained any misperceptions about her abilities at the time her employment was terminated so as to meet the requirements of a regarded-as-disabled claim. *Gruener*, 2008 U.S. App. LEXIS 30, at *6.  Therefore, the Plaintiff has not established that she is an individual with a disability under this prong.

The Plaintiff has not proved that she is an individual with a disability as defined by the

KCRA.  Therefore, the Defendants' Motion for Summary Judgment as to the Plaintiff's claim for disability discrimination under the Kentucky Civil Rights Act is **GRANTED.**

## 2.  Retaliation and Wrongful Termination under the Kentucky Civil Rights Act

In Count II of the Amended Complaint, the Plaintiff alleges (1) she requested the opportunity for job positions that became available and was ready, willing and able to perform but was denied those jobs; and (2) the Defendants discriminated and retaliated against her by subjecting her to an unjust termination solely because the Defendants regarded her as having a disability, and the Defendants had no legitimate business reasons for her termination.  The Plaintiff, however, has not advanced her retaliation argument in the record before the Court, and failed to address Federal-Mogul's contention that she has not proved a prima facie case of retaliation in her response to the Defendants' Motion for Summary Judgment.

"A plaintiff may prevail on a disability-retaliation claim 'even if the underlying claim of disability fails,'" as the Plaintiff's claim has in the instant action.   *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007) (quoting *Soileau v. Guilford of Me.*, 105 F.3d 12, 16 (1st Cir. 1997); accord *Cassimy v. Bd. of Educ.*, 461 F.3d 932, 938 (7th Cir. 2006); *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004) ("Unlike a claim for discrimination under the ADA, an ADA retaliation claim based upon an employee having requested an accommodation does not require that a plaintiff show that he or she is 'disabled' within the meaning of the ADA."); *Heisler v. Metro. Council*, 339 F.3d 622, 630 (8th Cir. 2003)).

As with the Plaintiff's disability discrimination claim, here the Plaintiff is also first required to establish a prima facie case of retaliation before the burden shifts to the Defendants.

In order to establish that prima facie case, the Plaintiff must show that:

(1) she engaged in protected activity;

(2) she suffered an adverse employment action; and

(4) there is a causal link between the protected activity and the adverse employment action.

*Id.* (citing *Penny v. UPS*, 128 F.3d 408, 417 (6th Cir. 1997)).

Federal-Mogul does not seem to dispute that the Plaintiff could satisfy the first two elements of the prima facie showing (although the Plaintiff has not presented any arguments on the matter) but argues that it is entitled to summary judgment on the retaliation claim because the Plaintiff has failed to present any evidence of the third element-a causal link between any protected activity and the adverse employment action. It is true that the Plaintiff has not attempted to develop her retaliation claim in the face of the Defendants' motion for summary judgment. Given that the Plaintiff has not introduced any evidence of a causal link between her termination and any protected activity, no reasonable jury could conclude on the evidence in the record that the Plaintiff was terminated in retaliation for protected conduct. Therefore, the Defendants' Motion for Summary Judgement as to the Plaintiff's retaliation claim under the KCRA is **GRANTED.**

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED.**

An appropriate order shall issue.